**FILED**
**Feb 07, 2022**
**10:38 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





### TENNESSE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| **MICHAEL HARLAN BYRD,** | ) | **Docket No.: 2019-05-0430** |
| **Employee,** | ) | |
| | ) | |
| **v.** | ) | **State File No. 64385-2016** |
| | ) | |
| **GENERAL MOTORS,** | ) | |
| **Self-Insured Employer** | ) | **Judge Thomas Wyatt** |

---

### EXPEDITED HEARING ORDER DENYING BENEFITS

---

At an Expedited Hearing on February 2, 2022, Michael Harlan Byrd sought treatment and temporary disability benefits for a back condition allegedly related to his compensable ankle injury. General Motors argued that Mr. Byrd's back condition did not arise primarily from employment because it was degenerative and pre-existed the ankle injury. For the reasons below, the Court denies the requested benefits at this time.

### History of Claim

Mr. Byrd fell at home while recuperating from a compensable left-ankle injury. He testified it happened between January 22 and February 28, 2018. He alleged that he injured his left shoulder, left elbow, and back in the fall. At the time of the fall, Mr. Byrd received authorized ankle treatment from Dr. Ronald Derr.

After a visit on February 28, 2018, Dr. Derr noted Mr. Byrd's fall without mention of related injury. During the next visit, on April 4, Dr. Derr noted that Mr. Byrd reported shoulder pain related to the fall. The note did not mention back pain. Dr. Derr referred Mr. Byrd to Dr. Christopher Stark and wrote, "I feel that his shoulder is related to his foot, due to the fact that the ankle and the foot injury made him fall." General Motors accepted the referral, but a delay occurred in Mr. Byrd seeing Dr. Stark.

1

During Dr. Derr's continued ankle treatment, he noted on June 6, 2018, that Mr. Byrd was seeing a chiropractor, Dr. Alfred Farrier, for spinal pain. Dr. Derr's only comment about treatment of the back was, "He should continue with chiropractic care for his compensatory issues."

In August 2018, Mr. Byrd was diagnosed with a spinal infection. Orthopedist Dr. Erion Qamirani performed two surgeries for the infection. Mr. Byrd remained in the hospital ten days after the surgeries. He testified that the infection was not work-related.

After recovering from spine surgery, Mr. Byrd finally saw Dr. Stark on September 26, 2018, to comply with Dr. Derr's referral. Dr. Stark noted Mr. Byrd's report of injuring his left shoulder and elbow after falling at home due to ankle pain. Dr. Stark did not record a history of back pain, either from the fall or otherwise.[1] However, Dr. Stark did note unspecified neurological weakness on physical examination.

At some point, Mr. Byrd asked General Motors to provide medical and disability benefits for his back. He argued that his ongoing back problems related to either the fall at home or a gait disorder caused by his compensable ankle injury. General Motors authorized Dr. John Klekamp to see Mr. Byrd for his spine.

In November 2019, Dr. Klekamp performed a physical examination, took a history, and reviewed medical records. He concluded that "there is a 45% chance that [Mr. Byrd's spine condition] is related to his previous fall." He added, "I cannot relate the current ongoing mid and low back pain causation to the fall." He cited Mr. Byrd's history of chronic back pain and the physicians' failure to document back complaints in the weeks after the fall.[2] General Motors denied the back claim after receiving Dr. Klekamp's causation opinion.

Mr. Byrd filed a Petition for Benefit Determination and later requested this hearing to seek medical and temporary disability benefits for his back.

In support of his position, Mr. Byrd obtained signed causation letters from Drs. Farrier and Qamirani. The chiropractor related Mr. Byrd's thoracic pain to the fall and his lumbar pain to a gait disorder resulting from the left-ankle injury. He wrote, "[T]he ankle injury has been the cause of [his] problems . . . seeing as there was no problem prior to the ankle injury." Dr. Qamirani wrote a short causation letter that included the following opinion: "[M]ore likely than not Mr. Byrd's ankle injury at work resulted in more than 51% . . . of his thoracic and lumbar spine degenerative disc disease and symptoms."

---

[1] Mr. Byrd testified he told Dr. Stark that he injured his back in the fall.
[2] Mr. Byrd testified he had previous back pain more than ten years ago, and it had resolved.

General Motors then obtained a sworn declaration in which Dr. Qamirani changed his opinion. He testified that Mr. Byrd did not relate his back pain to a fall or an altered gait while active treatment continued. He stated Mr. Byrd gave that history more than a year later, when asking for the causation letter.

Dr. Qamirani explained that Mr. Byrd had degenerative disc disease in his spine that was not caused by a fall or altered gait. However, the spinal symptoms Mr. Byrd experienced between the dates of the fall and the first surgery "may have been due to an aggravation of his underlying degenerative disc disease as a result of his altered gait or alleged fall."[3] However, Dr. Qamirani stated that, after surgery, "[I]t became impossible for me to differentiate between the possible causes of Mr. Byrd's pain complaints." "[I]t is just as likely that his continued symptoms in his thoracic and lumbar spine[s] arose primarily out of the natural consequences of his spinal surgery."

Mr. Byrd argued that Dr. Qamirani's declaration is suspect because it was given after General Motors "contacted him." He stated he knows why Dr. Qamirani changed his opinion but did not explain.

Regarding temporary disability benefits, Mr. Byrd testified he attempted to return to work at General Motors but was physically unable to do the work. He has worked several jobs since his injury but cannot perform work as strenuous as he previously could. Mr. Byrd did not provide the dates he missed work after the termination of temporary benefits.

**Findings of Fact and Conclusions of Law**

To recover, Mr. Byrd must present sufficient evidence to show that he will likely prevail at a hearing on the merits that his spinal condition, its treatment, and any resulting disability arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-239(d)(1) (2021). "An injury 'arises primarily out of and in the course of employment' only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing death, disablement or need for medical treatment, considering all causes." "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(A)-(D).

Here, the issue is whether Mr. Byrd's back condition is work-related. Three providers gave opinions on this question. Dr. Klekamp concluded that the work injury did not account for more than fifty percent of Mr. Byrd's pre-existing back condition. He cited

---

[3] Mr. Byrd received temporary disability benefits from the date of the fall and the date of Dr. Qamirani's surgery because he was off work for his ankle during that period.

the fact that the providers who treated Mr. Byrd in the weeks after the fall did not note that he complained of back pain at that time.

Dr. Farrier stated that Mr. Byrd's fall caused his thoracic pain, and a gait disorder from his compensable left-ankle injury caused his lumbar pain. He relied on the fact that Mr. Byrd did not have back pain before he injured his ankle.

While Dr. Qamirani initially supported Mr. Byrd's position, he later changed his opinion. He noted that, at the time of his treatment, Mr. Byrd did not relate his back pain to a fall or a gait disorder. Further, Mr. Byrd did not relate his back pain and his ankle injury to Dr. Qamirani until a year after surgery.

Dr. Qamirani also stated that the fall or gait disorder did not cause Mr. Byrd's degenerative conditions. He did say that the back pain Mr. Byrd endured up to the date of spinal surgery "may have been" due to the fall or a gait alteration. However, after the surgery, Dr. Qamirani concluded that it was impossible for him to attribute Mr. Byrd's pain to any specific cause.

When faced with competing expert opinions, the Court can consider, among other things, the qualifications of the experts, the circumstances of their examinations, and the information available to them in reaching their opinions. *Lamb v. KARM Thrift Stores, LLC,* 2017 TN Wrk. Comp. App. Bd. LEXIS 212, at *7 (Jul. 26, 2017). Here, analysis of the pertinent factors leads to the conclusion that the opinions of Dr. Qamirani best assist the Court in resolving the issue of whether Mr. Byrd proved the work-relatedness of his spinal condition. Dr. Qamirani's long treatment of Mr. Byrd's spinal symptoms, including surgery, places him in the best position to address causation.

Dr. Qamirani's opinions compel the Court to hold that Mr. Byrd failed to carry his burden of proving a likelihood of prevailing at trial in proving the work-relatedness of his spinal injury. At best, Dr. Qamirani stated that Mr. Byrd's fall and gait disorder "may have been" aggravated by his pre-existing spinal condition. This measure of proof is insufficient to meet the statutory requirement to provide expert medical testimony that rises above speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14)(D).[4]

Having not met his burden of proof, Mr. Byrd cannot recover medical or temporary disability benefits for his back condition.

---

[4] The Court also finds that Dr. Derr's description of Mr. Byrd's back pain as "contributory" fails to satisfy the necessary standard of proof for a finding that his back pain is work-related.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. Byrd's requested benefits at this time.

2. A Status Hearing is set at **10:30 a.m. Eastern Time/9:30 a.m. Central Time on May 23, 2022**. The parties shall call 855-747-1721 (toll-free) or 615-741-3061 to participate in the hearing. Failure to call may result in a determination of the issues without the absent party's input.

**ENTERED February 7, 2022.**

*Thomas Wyatt*
_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

### APPENDIX

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Transfer Order
4. Request for Expedited Hearing
5. Employer's Response to Request for Expedited Hearing
6. Employer's Notice of Filing

Exhibits:
1. Rule 72 Declaration of Michael Harlan Byrd with attached chronology
2. Letter signed by Chiropractor Alfred J. Farrier
3. Letter signed by Dr. Erion Qamirani
4. Report of Dr. Ronald Derr
5. Records of Dr. Christopher Stark
6. Copies of radiological films (sustained objection for lack of foundation)
7. Article from *Sharing Mayo Clinic* (sustained objection for lack of foundation)
8. Amended Rule 72 Declaration of Dr. Erion Qamirani
9. Rule 72 Declaration of Tina Fodo
10. Compilation of medical records submitted by General Motors
    - Records signed by Dr. Charles Lee
    - Records of Dr. Ronald Derr
    - Records of Maury Regional Hospital (Dr. Qamirani)
    - Records of Dr. Christopher Stark

11. Order Approving Settlement Agreement
12. Wage Statement

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on February 7, 2022.

| Name | First Class Mail | Email | Service sent to: |
|---|---|---|---|
| Michael Harlan Byrd Employee | X | X | icemanspecops@yahoo.com P.O. Box 252 Elkton, TN 38455 |
| Nathaniel Cherry Employer's Attorney | | X | ncherry@howardtatelaw.com |

**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov